E-filing

FILED

DEC 30 2006

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN RAY DEVEREAUX,<br>C.D.C. No. P-63547,<br><br>Petitioner,<br><br>v.<br><br>JULIO VALADEZ, Warden,<br>California Medical Facility,<br><br>Respondent. | No. C 03-00264 MJJ<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |

## INTRODUCTION

On January 17, 2003, Kevin Devereaux ("Petitioner") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(d). In his Petition, Petitioner alleges that his guarantee against double jeopardy and his due process rights under the Fifth Amendment were violated when he was re-tried following an acquittal on one count and a hung jury on the other count. For the following reasons, the Court **DENIES** the Petition.

## FACTUAL BACKGROUND

On July 23, 1996, the office of a Burlingame food market was burglarized. Sue Kim, the owner of the market, saw an unknown African-American man in the employees-only area of the market. The man claimed to be a repairman and then asked to leave by the back door. When Kim prevented him from doing so, the man ran out the front of the market. Kim went upstairs to the office and found that about $2,000 in cash and food stamps was missing.

The crime lab analyzed the fingerprints collected at the crime scene and returned a list of possible suspects. Petitioner's name appeared on the list. On February 19, 1997, Kim was shown a photographic lineup, but could not identify the man she had seen. In March 1997, police contacted Petitioner, who admitted that he might have been in Burlingame in July 1996 while working for a delivery service. The police later learned that Petitioner was not working for the delivery service at that time, but had been employed elsewhere. Petitioner was not working on the day of the burglary.

Petitioner was arrested on January 28, 1998, and the police took his fingerprints. The crime lab matched Petitioner's newly-taken fingerprints with those from the scene of the burglary. On February 25, 1998, Petitioner was charged with grand theft, second-degree burglary, and a "strike" violation for prior thefts. *See* CAL. PENAL CODE §§ 487(a) (grand theft), 460(b) (second degree burglary), 666 (conviction of theft after suffering previous theft conviction).

In November 1998, Petitioner was tried on the grand theft and second-degree burglary charges.[1] During the trial, Kim testified that Petitioner did not match the identity of the stranger she spoke with near the back of the market. According to Kim's testimony, the stranger she encountered on the day of the burglary was lighter skinned than Petitioner. Kim also described the man as six feet tall, with a large build, a light black complexion, very short dark hair, clean-shaven, well-dressed, and with a voice that suggested that he was an educated person. Petitioner's wife testified in his defense. She identified a photograph of Petitioner as one taken in February or March of 1996, and testified that the photograph accurately depicted his appearance in July 1996. The photograph and testimony further indicated that Petitioner was five-foot nine inches tall, 145 pounds, scruffy, and had a dark complection.

The jury acquitted Petitioner of grand theft, but was unable to reach a verdict on the second-degree burglary charge. On November 6, 1998, the trial court declared a mistrial on the second-degree burglary charge and discharged the jury. The State decided to retry Petitioner on the second-degree burglary charge. The trial court denied Petitioner's initial oral motion to dismiss the second-degree burglary charge in the interests of justice, and his subsequent written motion to dismiss. Before the second trial began, defense counsel advised the court that the prior acquittal for grand theft should bar prosecution on the burglary count since they arose from the same set of facts. Counsel also argued that

---

[1] The trial court granted the State's motion to dismiss the third count.

2

the evidence the prosecution could rely on at retrial should be limited by the first jury's ruling that Petitioner was not guilty of grand theft. The trial court agreed with counsel's second argument and precluded the State from offering evidence that Petitioner took property from the market office.

Despite the limitation, the second jury convicted Petitioner of burglary. The trial court denied Petitioner's post-conviction motion to dismiss on collateral estoppel grounds. Petitioner appealed on the theory that collateral estoppel barred his retrial. On August 6, 2001, the court of appeal affirmed Petitioner's conviction. On November 20, 2001, the California Supreme Court denied Petitioner's request for review. On January 17, 2003, Petitioner timely filed the instant Petition.

## LEGAL STANDARD

A federal court may grant a writ of habeas corpus to a state prisoner only if the state court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented" in the state courts. 28 U.S.C. § 2254(d). A state court's decision is contrary to federal law if it "failed to apply the correct controlling authority from the Supreme Court." *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2001) (quoting *Shakleford v. Hubbard*, 234 F.3d 1072, 1077 (9th Cir. 2000)); *see also Williams v. Taylor*, 529 U.S. 362, 405–407 (2000); *LaJoie v. Thompson*, 217 F.3d 663, 667–68 (9th Cir. 2000); *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000). A state court decision is an "unreasonable application" of Supreme Court law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–408. In order to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Id.* at 409. Thus:

> [The Court] must reverse a state court's decision as involving an 'unreasonable application' of clearly established federal law when our independent review of the legal question does not merely allow us ultimately to conclude that the petitioner has the better of two reasonable legal arguments, but rather leaves us with a 'firm conviction' that one answer, the one rejected by the court, was correct and the other, the application of the federal law that the court adopted, was erroneous – in other words that clear error occurred.

*Van Tran*, 212 F.3d at 1153–54. A ruling which is "debatable" is not clear error. *See*

3

1  *McDowell v. Calderon*, 197 F.3d 1253, 1256 (9th Cir. 1999).

2  Even if the state court's ruling is contrary to or an unreasonable application of Supreme Court precedent, that error justifies overturning the conviction only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *Shackleford*, 234 F.3d at 1079 (also quoting *Brecht*). The *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error review conducted by the state courts. *Karis v. Calderon*, 283 F.3d 1117, 1128 n.4 (9th Cir. 2002); *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000).

Ordinarily on habeas review, state court findings of fact are presumed correct. *See* 28 U.S.C. § 2254(d); *cf. Cichos v. Ind.*, 385 U.S. 76, 79-80 (1966). "The preclusive effect of the jury's verdict, however, is a question of federal law which [the court] must review *de novo*." *Schiro v. Farley*, 510 U.S. 222, 232 (1994).

## ANALYSIS

The sole issue before the Court is whether the state court's refusal to apply the doctrine of collateral estoppel to Petitioner's second-degree burglary charge was an unreasonable application of federal law. The Court first analyzes the state's application of federal law to determine whether the result was objectively reasonable. 28 U.S.C. § 2254(d). If the result was not objectively reasonable, the Court will reverse the conviction only if there was a substantial and injurious effect. *Penry*, 532 U.S. at 795.

### I.  State Application of Federal Law

Collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *see also Dowling v. United States*, 493 U.S. 342, 350 (1990). Although the doctrine of collateral estoppel in the criminal context evolved as an outgrowth of the Fifth Amendment's Double Jeopardy Clause, *Ashe*, 397 U.S. at 442, it does not apply to a retrial resulting from a hung jury because "a hung jury is not an event that terminates the original

4

jeopardy, even if there has been an acquittal on another count." *United States v. Bailin*, 977 F.2d 270, 274 (7th Cir. 1992) (quoting *Richardson v. United States*, 468 U.S. 317, 324 (1984)) (internal quotations omitted); *see also United States v. Sanford*, 429 U.S. 14, 15 (1976). Rather, collateral estoppel applies when multi-count charges are tried and the jury acquits a defendant of at least one count but hangs on the others so long as the necessary and ultimate fact has been decided by the jury. *United States v. Romeo*, 114 F.3d 141, 143 (9th Cir. 1997) (collateral estoppel barred subsequent litigation because knowledge was the only contested element at retrial and was necessarily decided in the first trial); *United States v. Console*, 13 F.3d 641, 664 (3d Cir. 1993) (subsequent convictions were affirmed on appeal because the ultimate issue of fact had not been decided in the first trial); *cf. Richardson*, 468 U.S. 317 (Supreme Court allowed a retrial on the counts that resulted in a mistrial, but not on the count that resulted in an acquittal).

Respondent argues that the state court's interpretation was objectively reasonable because: (1) the Supreme Court has not directly addressed whether collateral estoppel applies in the context of retrials; and (2) inconsistent jury results nullify any collateral estoppel argument. The Court disagrees with both contentions, but nevertheless finds that the Petition lacks merit.

### A. Collateral Estoppel as Applied in the Retrial Context

As indicated above, a retrial resulting from a hung jury does not violate the Double Jeopardy Clause because the original jeopardy has not ended. *Richardson*, 468 U.S. at 324 (citing *Logan v. United States*, 144 U.S. 263, 297–98 (1892)). In *Richardson*, the Supreme Court opined that "without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial." *Id.* (quoting *Ariz. v. Wash.*, 434 U.S. 497, 509 (1978)). This is so because the termination of jeopardy and the termination of a trial are two distinct logical units. *See id.* Federal courts have applied a similar collateral estoppel analysis when deciding whether to allow a retrial. *See, e.g., Console*, 13 F.3d at 664; *Bailin*, 977 F.2d at 276; *see also Romeo*, 114 F.3d at 143; *Seley*, 957 F.2d at 723; *cf. Ashe*, 397 U.S. 436; *Richardson*, 468 U.S. 317.

The California Supreme Court, unlike federal courts, has been reluctant to apply the *Ashe* line of cases, because the application of collateral estoppel to a retrial based on a hung jury in a multi-count indictment had not been clearly established by the Supreme Court of the United States. *See People v. Santamaria*, 8 Cal. 4th 903, 915 (1994). Here, the state court of appeal followed *People v. Santamaria* and held that Petitioner's retrial constituted the "same proceeding" and was not a "future proceeding" as contemplated by *Ashe*.

Respondent claims that the uncertainty about collateral estoppel's effect on retrials is confirmed by the Ninth Circuit decision in *Santamaria v. Horsley*, 133 F.3d 1242 (9th Cir. 1998) (en banc). Specifically, in *Santamaria v. Horsley*, the Ninth Circuit reversed its earlier holding in *Pettaway v. Plummer*, 943 F.2d 1041 (9th Cir. 1991). In *Pettaway*, the jury held "not true" an enhanced weapons charge of using a knife to commit a murder while simultaneously finding the defendant guilty of murder. 943 F.2d at 1043. The conviction for murder was later reversed on appeal and the state sought to retry the defendant for murder. *Id.* at 1047–48. The defendant appealed the decision of the state to retry him and the Ninth Circuit concluded that collateral estoppel prevented the retrial on any theory factually inconsistent with the "not true" determination. *Id.* Here, Respondent contends that by overruling *Pettaway*, the Ninth Circuit determined that collateral estoppel could not be used in the context of retrial. Such an interpretation misses the court's critical disclaimer of what was *not* decided:

> At the outset, we identify what this case is not about. *Santamaria* does not argue that his retrial for murder is barred by the Double Jeopardy Clause of the Fifth Amendment . . . . Nor are we concerned with whether collateral estoppel should be limited to subsequent trials, as opposed to retrials; we assume without deciding that the doctrine does apply to retrials.

*Horsely*, 133 F.3d at 1244. Thus, contrary to Respondent's view, the Ninth Circuit has recognized the applicability of collateral estoppel in the retrial context. *See also Romeo*, 114 F.3d at 144 (Ninth Circuit applying collateral estoppel for retrial following acquittal on one count and a hung jury on others); *United States v. Seley*, 957 F.2d 717, 720–21 (9th Cir. 1992) (application of collateral estoppel following acquittal on one count and no verdict on others); *Console*, 13 F.3d 641; *Bailin*, 977 F.2d 270.

6

The Court thus concludes that the application of collateral estoppel is well established by Supreme Court precedent in both *Richardson*, *Ashe*, and their appellate progeny. *See Richardson*, 468 U.S. 317; *Ashe*, 397 U.S. 436.[2] The Supreme Court has also held that a retrial is in fact a *second trial*, allowing for the application of *Ashe* in a hung jury situation. *Ashe*, 397 U.S. 436. Therefore, in this case, the state court's decision to deny collateral estoppel is contrary to and involves an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d). Nevertheless, Respondent argues that even if collateral estoppel does apply to retrials, the state court correctly applied federal law because the doctrine does not apply when a jury returns inconsistent results. The Court turns to that question now.

### B. Collateral Estoppel as Applied to Inconsistent Jury Results

In *United States v. Powell*, the Supreme Court held that collateral estoppel could not be applied when a jury returned inconsistent verdicts. 469 U.S. 57 (1984). Respondent contends that the application of *Powell* precludes the use of collateral estoppel and permits the State to retry Petitioner. Respondent misreads the *Powell* line of cases. The *Powell* Court noted that if the original split verdict convicting a defendant had been inherently inconsistent, collateral estoppel would not apply as to a retrial. *See id.* at 69; *see also Dunn v. United States*, 284 U.S. 390 (1932) (when a criminal defendant is tried for multiple counts, collateral estoppel cannot be used to attack *the conviction* on one count on grounds that it is inconsistent with acquittal on another); *Hofer v. Morrow*, 797 F.2d 348 (7th Cir. 1986) (when a jury *convicts* a defendant on some counts inconsistent with their acquittal of defendant on other counts, the "inconsistent verdicts cannot be used to establish collateral estoppel and thereby bar retrial").

The analysis in *Powell* and its progeny is inapplicable to a situation where the defendant was acquitted in the initial proceeding. *Bailin*, 977 F.2d at 277–80 (citing *United States v. Scott*, 437 U.S. 82 (1978)). In *Powell*, *Dunn*, and *Hofer*, the defendants had been acquitted on one count and convicted on another. As such, the juries' inconsistent verdicts

---

[2] *Richardson*, *Ashe*, and later appellate court cases all line up on the side of allowing collateral estoppel when an issue of ultimate fact has been decided in the first instance. Indeed, *Santamaria v. Horsely*, 133 F.3d 1244, seems to take this for granted when quickly dismissing an opposing argument in its holding.

7

made it impossible to determine whether any particular result had been decided against the defendant. Thus, issue preclusion was not appropriate. *Id.* at 279.

The analogous argument cannot be made when a jury acquits on one count and hangs on another. *Id; see also Romeo*, 114 F.3d at 144 ("[*Powell*] has considerably less force when the contention is ... that the jury's *verdict* on one count is inconsistent with its *failure to reach a verdict* on another count") (italics in original). In such a case, the jury necessarily has returned a verdict of not guilty for the acquitted charges but has failed to return a verdict on the hung charges. The charge on which the jury hung has no bearing in terms of a conviction or acquittal. *See Richardson*, 468 U.S. at 321–24 (hung jury has no significance that might benefit defendant). Consequently, the actual *verdicts* are consistent because the count that hung the jury has had no verdict returned and thus the acquittal stands uncontradicted. *Bailin*, 977 F.2d at 279. Here, the jury *did not convict* Petitioner and therefore the *Powell* line of cases does not apply.

Since a hung jury does not return a verdict and the result produced with respect to the acquitted charges is consistent, the court of appeal incorrectly applied the *Powell* standard in this case and failed to apply the correct controlling authority when it determined that there *were* inconsistent verdicts. Thus, the state court's decision to deny collateral estoppel is contrary to and involves an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). However, the Court will only overturn the conviction if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Penry*, 532 U.S. at 795.

## II. Substantial and Injurious Effect.

Where a jury acquits a defendant of at least one count while hanging on the others in a multi-count trial, the Ninth Circuit applies a three-step approach to determine whether collateral estoppel should apply in disallowing a second trial:

> (1) An identification of the issues in the two actions for the purposes of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior

8

> proceeding to ascertain *whether the issue was necessarily decided in the first case.*

*Romeo*, 114 F.3d at 143 (quoting *United States v. McLaurin*, 57 F.3d 823, 826 (9th Cir. 1995)) (emphasis in *McLaurin*). Here, only the third prong is in question. In analyzing the third prong, courts must use "realism and rationality" instead of a hypertechnical formalistic examination of the case. *Ashe*, 397 U.S. at 444. The Ninth Circuit has further clarified the third prong's analysis by restricting a court's review to what the jury *actually* decided, not to what they could not decide:

> Because there are so many variable factors which can cause a jury not to reach a verdict, we will not speculate on why the jury could not agree. The inquiry under *Ashe* is what the jury *actually decided* when it reached its verdict, not on why the jury could not agree on the deadlocked count.

*Romeo*, 114 F.3d at 144 (emphasis added).

In particular, when an acquittal is based on a general verdict, a court should "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* "The burden [is] on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling*, 493 U.S. at 350 (citing *United States v. Lasky*, 600 F.2d 765, 769 (9th Cir. 1979)).

In the present case, both Petitioner and Respondent agree that the sole issue litigated in both trials was the assailant's identity. The court of appeal similarly stated that "the issue at the first trial was the perpetrator's identity." Nonetheless, the jury's verdict is consistent with a determination that while Petitioner was the person involved in both charged crimes, the additional element in grand theft had not been sufficiently proven. Petitioner was charged with both grand theft and second degree burglary. To have convicted Petitioner of grand theft, the jury would have had to determine that on the day of the burglary: (a) Petitioner (b) took property exceeding four hundred dollars from the market office (c) with the intent to permanently deprive the market of the property. (Response, Ex F. at 57, 105.) A conviction

9

of second-degree burglary would have required the jury to find that: (a) Petitioner (b) entered the market or any room within the market (c) with the intent, at the time of entry, to permanently deprive the owner of some property. *Id.* at 98–99; *see also* CAL. PENAL CODE § 459 (defendant is guilty of burglary when he or she enters a building with an intent to commit any felony therein).

In determining whether the error had a substantial and injurious effect, the Court focuses its analysis on what the jury *actually decided* instead of speculating as to why it could not reach a consensus on the hung count. *Romeo*, 114 F.3d at 144. The acquittal on the grand theft charge means the jury *actually decided* the government failed to prove beyond a reasonable doubt that Petitioner took the money and food stamps. After the first trial, both the identity and intent elements were still left unresolved.

Second degree burglary only requires "intent" to commit a felony, not the actual commission of the felony. (Response, Ex. F at 98–99); *see also* CAL. PENAL CODE § 459. Thus, an acquittal for grand theft does not eliminate the possibility that on the day of the crime Petitioner entered the market with the intent to commit grand theft or some other felony.

Therefore, what the first jury *actually decided* was not necessarily the issue of identity (*i.e.* that Petitioner was not the man who entered the market on the day of the burglary), but instead the issue of the lack of sufficient proof to sustain a guilty verdict for theft. *See Romeo*, 114 F.3d at 144. Such a reading of the jury's verdict is also consistent with its inability to reach a verdict. Had the jury actually decided that identity was the only issue that mattered, there would have been no reason for them to hang. Since the issue of identity was not necessarily decided by the first jury, Petitioner's claim that collateral estoppel precludes retrial on the issue of identity fails to meet the third prong of the analysis set forth in *Romeo*.[3] Accordingly, Petitioner has not met the burden of demonstrating that the "issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling*, 493 U.S. at 350; *Lasky*, 600 F.2d at 769.

---

[3] Since Petitioner was acquitted of grand theft, collateral estoppel precludes the prosecution from relitigating the issue of whether Petitioner took the money and food stamps. The second trial judge properly excluded the presentation of such evidence at retrial.

Allowing the prosecution to litigate the second-degree burglary charge on the theory that Petitioner entered the market with the intent to commit a felony does not violate the collateral estoppel principles established in *Ashe*.

## CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is **DENIED**. The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: 12/30/2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE